**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennison ETSITTY, Defendant–
Appellant.**

**No. 96–10344.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1997.

Decided Dec. 2, 1997.

---

Bram Jacobson, Assistant Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Linda C. Boone, Assistant United States Attorney, Phoenix, AZ, for plaintiff-appellee.

Before: SCHROEDER and KLEINFELD, Circuit Judges and WALLACH, Judge.[*]

PER CURIAM.

Dennison Etsitty was convicted of one count of kidnaping, 18 U.S.C. sections 1153 and 1201, and three counts of assault with a dangerous weapon, 18 U.S.C. sections 1153 and 113(a)(3), by the United States District Court for the District of Arizona following a jury trial. He is serving his sentence of 99 years. Etsitty appeals his conviction on four grounds: that the court erred in excluding a suicide note written by his brother; that the prosecutor committed prosecutorial misconduct during his closing argument by leading the jury to believe that no suicide note existed; that Etsitty was denied his rights to a representative jury under the fifth and sixth amendments to the United States Constitution; and that the district court erred in denying Etsitty's motion pursuant to Fed. R.Crim.P. 29 for acquittal of the kidnaping charge. We affirm the conviction.

[*] The Honorable Evan J. Wallach, Judge of the United States Court of International Trade, sitting by designation.

## I. BACKGROUND

With the exception of identity, the facts of this case are not in dispute. On July 31, 1995 Ginger Yoe, then 16 years old, and Nathan Yoe, then 14 years old, were moving livestock to a grazing area on the Navajo reservation in northern Arizona. Etsitty approached them alone on horseback, had a brief conversation with Ginger and rode away. A short while later, Etsitty returned, started poking a stick at Nathan and told Ginger, "let's go." Ginger ran, and Etsitty chased her on his horse. He roped her around her neck and dragged her along the ground for twenty feet. When she removed the rope, he tripped her and tried to tie her wrists. Ginger Yoe resisted and got up, but Etsitty knocked her down again. With Ginger lying on the ground, he sat on her back and tried to gag her with a bandana.

The girl continued to fight, and Etsitty tried to stuff her mouth with dirt and sticks. Nathan ran to them, yelling for him to let Ginger go. Etsitty struck Nathan with a piece of wood as the boy protected his head with his forearm. Ginger managed to get up and start to run again. Etsitty then struck her in the back of her head with the piece of wood and pushed her down as she stumbled. She got up again, and this time Etsitty swung the wood at her face, and struck her, knocking her unconscious.

When Ginger came to, Etsitty was on top of her, tearing at her shirt. She struggled further until he got off her. Ginger got up, as well, and picked up a rope. Etsitty grabbed the rope and used it to try to choke and gag her. He tried to put her on his horse, unsuccessfully, pushed her back down on the ground and again tried to gag her. When Etsitty noticed Nathan had gone for help, he gave up and left on his horse.

Based on the eyewitness descriptions given by Ginger and Nathan Yoe, Etsitty was charged by reservation authorities. He pleaded no contest to charges before an Indian tribunal, and began to serve time. Then, in the beginning of January 1996, Etsitty was indicted by the federal government. Several weeks later, his brother, Danny, committed suicide by hanging himself from a tree. Etsitty was tried and convicted in late May, 1996.

## II. DISCUSSION

### A. Exclusion of the Suicide Note

Etsitty contends that the district court erred when it excluded from evidence under Federal Rule of Evidence 403 a purported suicide note written by his brother Danny.[1] We review the exclusion of evidence under rule 403 for abuse of discretion. *United States v. Crosby,* 75 F.3d 1343, 1346 (9th Cir.1996).

The suicide note was written by hand, and included two relevant phrases: "Better than 5 years and A Ugly Life" and "5 YEARS stinks". Etsitty contended that this writing established his brother's guilty feelings over the assault on Ginger and Nathan Yoe, in support of his defense that his brother, not he, had committed the crime. The government objected, arguing that the letter's relevance and probative value were compromised because of a lack of evidence tying the note to the crime before the court.

The court analyzed the problem under Rule 403, which instructs us:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Civ.P. 403.

The district court excluded the letter, finding a lack of evidence connecting Danny, his motive for suicide, and the letter to the charged crimes. The suicide occurred more than a month after Etsitty pled no contest in tribal court and began serving time in custody, and no steps had been taken to prosecute Danny. There is no reason to believe that Danny thought himself in jeopardy over the instant crimes. There is no other evidence that could reasonably link Danny's writing to this case.

---

1. For purposes of this opinion, we assume that the suicide letter is authentic.

Under these circumstances, the note lacked probative value and its admission would have invited speculation by the jury. For these reasons, exclusion of the suicide note was not an abuse of discretion.

## B. Prosecutorial Misconduct

■ Etsitty argues next that the prosecutor committed two acts of misconduct during the trial, eliciting testimony from a government witness and presenting closing argument that suggested that Danny's suicide note did not exist. The defense objected to the second incident only.

■ We review an assertion of prosecutorial misconduct to which there was no objection at trial for plain error. *United States v. Zuno–Arce,* 44 F.3d 1420, 1422 (9th Cir.) *cert. denied,* —— U.S. ——, 116 S.Ct. 383, 133 L.Ed.2d 306 (1995). Where the court denied an objection to a closing argument, we review for abuse of discretion. *United States v. Santiago,* 46 F.3d 885, 892 (9th Cir.), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995).

The first incident occurred during the government's direct examination of Darrell Boye, an investigator for the Navajo police. The prosecutor asked Boye whether he found any writing at the scene of the suicide, and Boye replied that he found, scrawled in the dirt, "Bury me here in the ground," and nothing more. On cross-examination, Boye testified that there may have been a suicide note destroyed by the Etsitty brothers' grandmother. The defense did not object to the questions or the testimony. Later, it elicited testimony from the boys' mother that she had found a suicide note in Danny's apartment and sent it to the defense attorney.

Nothing in the questioning or the answers given can be construed to reflect an intention by the prosecutor to mislead the jury. It was not clear error to allow the exchange to go without correction. Moreover, after the contents of the suicide note had been excluded from evidence, its existence became irrelevant. There was no inference related to guilt or innocence that the jury could have drawn from the letter's existence. Therefore, had error occurred, it was harmless.

■ The second instance of prosecutorial misconduct is similarly unsubstantiated. Etsitty contends that the prosecutor mischaracterized identification evidence during his closing. This is a case of a misplaced word that was corrected quickly upon objection to eliminate any misunderstanding. The prosecutor argued that a witness had said a description was of Etsitty and not his brother, Danny. The defense objected that the witness had not said that the description was not of Danny. The court cautioned the jury that it must rely on its own memory of testimony, and not the attorneys'. The prosecutor then clarified his prior statement, saying that the witness said " '[t]hat's Dennison Etsitty.' ... He did not say that it was Danny Etsitty."

At most, the prosecutor phrased his argument inartfully. Based on the transcript, we have no reason to believe that the prosecutor intended to mislead the jury into believing that the witness had testified that he knew Danny and the description did not match him. He corrected himself quickly. Moreover, the court's instruction eliminated any prejudice that may have occurred during this courtroom exchange.

We find no misconduct, and note that had any occurred, it was harmless.

## C. Jury Composition

■ Etsitty contends that denial of his motion to transfer his case from the Phoenix Division of the District of Arizona back to its Prescott Division, where the case had originated, deprived him of a jury venire that reflected the large percentage of Indians in the Prescott Division, and violated his rights under the Fifth and Sixth Amendments and the Jury Selection and Service Act of 1968, 28 U.S.C. section 1861, *et seq.* We review the denial of a motion to transfer a trial for abuse of discretion. *United States v. Herbert,* 698 F.2d 981 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983); Fed.R.Crim.P. 18.

The crimes at issue here occurred within the territory of the Prescott Division. That

division contains several Indian reservations, and consequently a far higher percentage of Native Americans than the Phoenix Division. The case was calendared in Prescott initially, and transferred on the government's motion to Phoenix. The court later denied Etsitty's motion to return the case to Prescott for trial because it could not find a suitable courtroom in Prescott available at an appropriate time.

We approved the maintenance of divisions in the District of Arizona in *Herbert:* "The Jury Selection and Service Act specifically provides for splitting a district into divisions and using only one division's jury wheel for petit juries...." 698 F.2d at 984, *citing* 28 U.S.C. § 1861; *see also, United States v. Cannady,* 54 F.3d 544 (9th Cir.1995) (Upholding the use of divisions in California). As we held there, the United States Constitution allows petit juries to be drawn from the jury wheel of a single division and not the entire district, if the jury wheel is a fair and reasonable representation of the population of the division. *Herbert,* 698 F.2d at 984.

The Supreme Court announced a test for determining the constitutionality of jury selection under the fifth and sixth amendments in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979):

> In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that underrepresentation is due to systematic exclusion of the group in the jury selection process.

439 U.S. at 364, 99 S.Ct. at 668. We applied that test in deciding *Herbert,* 698 F.2d at 984, and we apply it in our analysis here.

There is nothing wrong with the Phoenix Division's jury selection plan. Etsitty does not allege, and we have no evidence, that the Phoenix Division's jury wheel is not a fair representation of the division's population. Rather, Etsitty complains that the offense derives from the transfer of the case from Prescott to Phoenix as part of a systematic exclusion of Indians from juries. He argues that the creation of the Prescott Division containing a far higher concentration of Indians, combined with the jury selection plan that has separate jury wheels for each division, and the propensity of Judge McNamee to move virtually all his Prescott cases to Phoenix, together establishes systematic jury discrimination.

■ As stated above, the creation of the Prescott Division and the use of separate divisional jury wheels are by themselves permissible. Moreover, a judge may hold a trial anywhere in a district at his or her discretion. *Herbert,* 698 F.2d at 984; Fed. R.Crim.P. 18, Committee Notes to 1966 Amendment. If, however, trials were systematically removed from the Prescott Division to the Phoenix Division, we would be confronted with a strong case for finding an exclusion of Indians in violation of *Duren.*

■ Inappropriate transfer between divisions might in some circumstances amount to abuse of discretion even without systematic exclusion of jurors by reason of ethnicity. *See United States v. Rybachek,* 643 F.Supp. 1086 (D.Alaska 1986) (inappropriate transfer might facilitate "oppressive litigation tactics"). The district court is required to "fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses" as well as "the prompt administration of justice." Fed.R.Crim.P. 18. While the prompt administration of justice might best be served in some circumstances by putting all the trials in one central location, the convenience of the defendant and witnesses might often be better served by trial closer to where the defendant and witnesses reside.

Etsitty argues that systematic transfer of cases from Prescott to Phoenix violated his right to a fair jury. His argument fails for lack of evidentiary support. We have no proof of the number or percentage of trials that Judge McNamee or the district's bench as a whole have transferred from Prescott. In the absence of factual support in the record, assertions made in briefs simply do not suffice. On the record before us, we can find no systematic exclusion of Indians from

Etsitty's jury or from the district's juries in general.

Nonetheless, we note with concern the District of Arizona's local rule 1.1(c), which states that "all civil and criminal cases founded upon causes of action in the Phoenix and Prescott Division shall be tried in Phoenix." If this rule were applied, it would constitute a systematic exclusion of Indian jurors. We cannot reach the issue here because the rule was not applied in Etsitty's case; his trial was scheduled to be held in Prescott before Judge McNamee transferred it for reasons other than rule 1.1(c). We are constrained to leave the constitutionality of rule 1.1(c) and the propensity of judges to remove trials from Prescott, if indeed they have one, for another day. We do caution the district court bench that we are deeply concerned about this issue, their procedures and Rule 1.1(c).

### D. Validity of the Kidnaping Charge

 Etsitty appeals the district court's denial of his motion pursuant to Fed. R.Crim.P. 29 for a judgment of acquittal on his kidnaping charge. We review such a denial *de novo*. *United States v. Freter*, 31 F.3d 783, 785 (9th Cir.), *cert. denied*, 513 U.S. 1048, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994). We review the evidence in a light favorable to the government to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Manarite*, 44 F.3d 1407, 1411 (9th Cir.), *cert. denied*, 515 U.S. 1158, 115 S.Ct. 2610, 132 L.Ed.2d 854 , —— U.S. ——, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995).

Etsitty contends that the kidnaping charge against him was merged into the assault charges and therefore his Rule 29 motion for a judgment of acquittal on the kidnaping charge was denied in error. He was convicted under the federal general kidnaping statute, 18 U.S.C. § 1201(a)(2):

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... when ... (2) any such act against the person is done within the special maritime and territorial juris-

diction of the United States ... shall be punished ....

18 U.S.C. § 1201(a)(2) (1994). The territorial jurisdiction of the United States includes Indian Reservations. 18 U.S.C. §§ 7(3), 1153(a).

 Etsitty contended below that the kidnaping offense requires asportation more substantial than that proved at trial. The court below rightly concluded that asportation is not an element of kidnaping under section 1201(a)(2), the section charged here. It is an element of subsection (a)(1), which requires that the victim be "willfully transported in interstate or foreign commerce." 18 U.S.C. § 1201(a)(1). In contrast, by the plain language of section 1201(a)(2), all that is required here is a seizure of a person on Indian territory. The list of prohibited acts is disjunctive, prohibiting seizure *or* abduction *or* carrying away. 18 U.S.C. § 1201(a)(2). There is no element of movement implied in "seizure", especially because "carrying away" is listed separately. *See United States v. Young*, 512 F.2d 321, 323 (4th Cir.1975), *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976); *United States v. Cassidy*, 571 F.2d 534, 536 (10th Cir.1978).

 Etsitty next argues that the kidnaping and assault charges are not sufficiently distinct to allow conviction on both. He cites *Robinson v. United States*, 388 A.2d 1210 (D.C.Ct.App.1978), which characterized the elements of the District of Columbia's kidnaping statute, similar in language to the federal statute, as follows:

> Thus, the crucial elements of the crime of kidnaping are: (1) a seizing, confining, etc., and (2) a holding or detention for (3) ransom or reward or otherwise. Technically, there is no requirement that the victim be moved any particular distance or held for any particular length of time to constitute a kidnaping.

388 A.2d at 1211. The *Robinson* court then determined that the offenses of kidnaping and assault with intent to rape were not distinct enough under the facts of the case to allow separate charges. *Id.* at 1212–13. Subsequent authority held that the *Robinson*

court applied an incorrect analysis to reach this conclusion. *Parker v. United States,* 692 A.2d 913, 915–17 (D.C.App.1997) (citing U.S. Supreme Court authority). *Robinson's* fact-based merger analysis was replaced with a more objective statute-based method endorsed by the Supreme Court.

In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court determined whether a defendant could be charged under Missouri law in one trial with first degree robbery (taking property in victim's presence by violence or putting him in fear of immediate bodily injury, a felony) and armed criminal action (committing a felony using a dangerous or deadly weapon). First, the Court held that the double jeopardy clause does not prohibit prosecution in one trial for multiple counts charging the same conduct: cumulative punishments are permissible if intended by the legislature. 459 U.S. at 363–65, 103 S.Ct. at 676–77. It then cast the issue in terms of statutory interpretation, controlled by rules of construction. *Id.* at 366–67, 103 S.Ct. at 678–79.

The applicable rules of statutory construction are as follows. First, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." *Id.* at 366, 103 S.Ct. at 678 *quoting Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Second, "where two statutory provisions proscribe the 'same offense,' they are construed *not* to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id.* at 366, 103 S.Ct. at 678 *quoting Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). In *Missouri v. Hunter,* the clear legislative intent to provide cumulative punishment was controlling. 459 U.S. at 367–68, 103 S.Ct. at 678–79.

Here, the kidnaping statute prohibits seizing a person and holding him for ransom, reward or otherwise, three elements. 18 U.S.C. § 1201(a). The assault statute under which Etsitty was charged prohibits assault with a dangerous weapon with intent to do bodily harm. 18 U.S.C. § 113(a)(3).

Based on the Supreme Court's test, the kidnaping and assault charges are not the same offense because each requires proof of facts the other does not. Kidnaping requires proof of seizure which the assault charges do not. The assault charges require proof of three substantive elements that the kidnaping charge does not: that the defendant intentionally struck or wounded the victim, acted with specific intent to do bodily harm, and used a dangerous weapon. The proofs of these charges are not co-extensive. Therefore they do not constitute the same offense, and further inquiry into legislative intent is not necessary. Charges, convictions and sentences on each of these offenses at the same trial are permissible.

We note the plethora of cases holding that a charge of kidnaping is merged into other charges such as rape and robbery. *E.g., Summerlin v. State,* 296 Ark. 347, 756 S.W.2d 908 (1988); *People v. Jackson,* 63 A.D.2d 1032, 406 N.Y.S.2d 345 (2d Dep't 1978). We share those courts' concern that there be standards to distinguish the crime of kidnaping from other crimes, so kidnaping is not broadened into a secondary charge wherever there is a detention accompanying another crime. "Were we to sanction a careless concept of the crime of kidnaping ... the boundaries of liability would be lost in infinity." *Chatwin v. United States,* 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946). Under the facts of this case and the guidance of *Missouri v. Hunter,* however, we do not find in the merger doctrine grounds to reverse Etsitty's conviction.

Moreover, based on the facts adduced at trial, a reasonable trier of fact certainly could find seizure, holding or detention by Etsitty of Ginger. He prevented her from escaping, in effect seizing or holding her, for a substantial period of time, for the purpose of causing her considerable bodily and emotional harm. Denying the motion for a judgment of acquittal was not error.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the conviction of Dennison Etsitty of the

crimes of assault with a dangerous weapon and kidnaping.

KLEINFELD, Circuit Judge, concurring:

I join in the opinion, except for section II(D), on the kidnapping conviction. As to that portion, I would reach the same result, but on a different basis.

I do not think the double jeopardy analysis in the opinion resolves the issue raised by appellant. His argument was that the evidence was insufficient to establish kidnaping, because he did not take the victim away from the place where he attacked her, and because the length of time he held her was not appreciable enough to turn an assault into a kidnapping. I agree with the majority that appellant's argument should fail, but the reason is that the evidence sufficed, not that the kidnapping conviction is permissible under the double jeopardy clause. We should respond to appellant's argument by determining what kidnapping is, and holding that reasonable jurors could conclude that Etsitty committed it.

The kidnapping statute applies to one who (1) "unlawfully" (2) "confines ... or carries away" (3) "and holds" (4) "for ransom or reward or otherwise" (5) "any person" (6) within the special territorial jurisdiction of the United States. 18 U.S.C. § 1201:

> Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> . . .
>
> (2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States
>
> . . .
>
> shall be punished by imprisonment for any term of years or for life.

At common law, kidnapping was the "forcible abduction or stealing away of a man, woman or child from their own country and sending them into another." Clark and Marshall, Crimes § 1023 (1967). The federal statute has dispensed with the requirement of asportation. It plainly says "confines ... or carries away." 18 U.S.C. § 1201(a). Thus, holding a victim in his or her own home or office by force for an extended period could constitute kidnapping.

Kidnapping, punishable by life imprisonment, is not committed whenever someone is held against their will, as when one person grabs another to do harm, and the victim says "Let me go." If the holding is part of another crime or attempt, and not of appreciable length, it does not amount to the separate offense of kidnapping. *See Robinson v. United States*, 388 A.2d 1210 (D.C.1978). Were the statute read more liberally, Congress would have empowered prosecutors at their unfettered discretion to charge the same conduct, such as impeding certain individuals, *see* 18 U.S.C. § 111(a)(1), as a mere misdemeanor or a life imprisonment felony. Such unfettered prosecutorial discretion to charge a life imprisonment felony would compel risk-averse people to plead guilty to any misdemeanor and even lesser felonies of which they were innocent. Some prosecutors now use kidnapping as a club every time a boyfriend and girlfriend are driving down the highway arguing, one of them says "let me out of this car right now," and the driver keeps arguing instead of pulling onto the shoulder.

The statute implies that seizure and confinement of a person is not enough to establish the crime. The statute says "seizes, confines ... *and holds* " (emphasis added). Meaning has to be given to the phrase "and holds" beyond the conduct already denoted by "seizes" and "confines." The Supreme Court has established that the holding must be "for an appreciable period." "The act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical or mental restraint *for an appreciable period* against the person's will and with a willful intent so to confine the victim." *Chatwin v. United States*, 326 U.S. 455, 460, 66 S.Ct. 233, 235, 90 L.Ed. 198 (1946) (emphasis added).

Etsitty does not argue that his purpose could not fall within the "or otherwise" phrase ("for ransom or reward or other-

wise"), so we need not consider whether the principle of *ejusdem generis* limits "otherwise" to purposes such as ransom and reward.

Etsitty argues that no reasonable jury could conclude that he confined and held the victim for long enough, independently of the attempted rape he was initially charged with, to establish kidnapping. He is right, as we have explained, that "an appreciable period" of holding is necessary to establish the offense, and that the holding must be more than an incidental part of some other crime or attempt. If the holding would be of little consequence to a victim, were it not for the crime or attempt of which it was an incidental part, or if it was not for an appreciable period, then treating the seizure and confinement of the victim as kidnapping would exceed the scope of the statute.

The question on a Rule 29 motion is whether any reasonable trier of fact could conclude that the elements of the crime were proved beyond a reasonable doubt. *United States v. Manarite*, 44 F.3d 1407, 1411 (9th Cir.1995). In this case, the jury could conclude that Etsitty confined and held the victim for an appreciable period. He lassoed her, dragged her along the ground by a rope around her throat, got off his horse, tripped her and tried to tie her wrists, knocked her down after she got up, sat on her back, tried to gag her, chased her when she got away, and struck her twice with a piece of wood. A jury could conclude that all this abuse took an appreciable length of time. A reasonable jury could also infer that using all this force to keep the victim from getting away was more than incidental to whatever purpose Etsitty had in trying to hold her.