FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GIORDANO JACKSON,
*Defendant-Appellant.*

No. 19-10070

D.C. No.
3:17-cr-08242-DJH-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GIORDANO JACKSON,
*Defendant-Appellant.*

No. 19-10071

D.C. No.
3:12-cr-08212-DJH-1

OPINION

Appeals from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted December 8, 2021
Pasadena, California

Filed February 3, 2022

Before:  William A. Fletcher, Johnnie B. Rawlinson, and
John B. Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY*

### Criminal Law

The panel reversed a conviction for kidnapping under 18 U.S.C. § 1201(a)(2), and remanded for resentencing.

The panel held that, in kidnapping prosecutions under § 1201(a)(2), courts should consider the factors set forth in *Government of the Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir. 1979), to evaluate whether the charged conduct constitutes kidnapping. This is a factual inquiry, taken up during a motion for acquittal under Federal Rule of Criminal Procedure 29 and, if appropriate based on the circumstances of the case, incorporated into jury instructions.

Applying those factors, the panel concluded that the government failed to prove beyond a reasonable doubt that a kidnapping occurred. The first factor, the duration of the holding, weighs against kidnapping, as a seven-minute holding would be quite brief on the spectrum of possible kidnappings. The second and third factors—the presence of a separate offense and the degree to which the holding was inherent in the other offense—strongly indicate that there

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was no kidnapping. The primary conduct here was an assault causing serious bodily injury, which inherently requires the defendant to keep the victim in close enough proximity to inflict the injuries. The fourth factor, whether the holding created significant danger independent of the separate offense, also weighs against classifying the conduct as kidnapping. To the extent that there was any confinement separate from the assault in this case, it was not an independent source of danger. In light of these factors, the panel concluded that no reasonable fact finder could have found the necessary elements of kidnapping beyond a reasonable doubt.

In a concurrently filed memorandum disposition, the panel affirmed the defendant's conviction of first-degree murder and multiple counts of assault.

## COUNSEL

Michele R. Moretti (argued), Law Office of Michele R. Moretti, Lake Butler, Florida, for Defendant-Appellant.

William G. Voit (argued), Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Glenn B. McCormick, Acting United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

**OPINION**

OWENS, Circuit Judge:

Giordano Jackson, a member of the Navajo Nation, appeals from his conviction for kidnapping under 18 U.S.C. § 1201(a)(2). We have jurisdiction under 28 U.S.C. 1291, and we reverse.[1]

## I. BACKGROUND

### A. The Violent Attack

In July 2017, Jackson violently attacked his then-girlfriend, Alvina Nez, on the Navajo Nation Indian Reservation. Alvina's minor son and minor nephew observed part of the attack, and her father, Alex Nez Sr., observed its aftermath.[2]

On the night of the attack, Alvina's son and nephew were in their grandparents' kitchen when a car pulled up outside. The boys then began hearing a noise: At first, they thought it was laughter, but as the boys went outside, it sounded like screaming or crying. From their grandparents' porch, they saw Jackson come around the car from the passenger's side to the driver's side, where Alvina was sitting with the door open. Then, Jackson started punching Alvina—in the face,

---

[1] Jackson was also convicted of first-degree murder for a subsequent September 2017 attack on the same victim, as well as multiple counts of assault against the responding police officers. He received a mandatory life sentence for the murder conviction. *See* 18 U.S.C. § 1111. He appealed that conviction, and we affirm in a concurrently filed memorandum disposition.

[2] Because there are multiple people in this case with the surname Nez, we refer to Alvina by her first name and to her father as Mr. Nez.

the head, the chest, and the arms—and tried to yank her from the car.

The boys ran into the house and to the bedroom, where they woke their grandparents and told them that Jackson was beating Alvina. Mr. Nez quickly dressed and went outside. Once there, he saw Alvina lying by the door of the nearby hogan,[3] covered in dirt and naked except for her underwear. Mr. Nez ordered Jackson off the property.

After the attack, Alvina had scratches and bruises on her arms, legs, and face, a black eye, blood dripping from her nose, and a bald spot on her head. Crying, she told her family that Jackson had dragged her around by her hair, yanked her arms, punched her, and tried to pull her into the hogan.

The entire attack lasted roughly six or seven minutes. The "laughing" went on for two or three minutes before the boys went outside. About two more minutes passed between when the boys went outside and when they ran back in to wake their grandparents. And Mr. Nez said it took another couple of minutes for him to dress and get outside. For the July attack, Jackson was charged with assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6), and kidnapping, *id.* § 1201(a)(2).

---

[3] A witness in the case defined a hogan as a small, one-room house. External sources add that it is "a Navajo Indian dwelling usually made of logs and mud with a door traditionally facing east." *Hogan*, *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/hogan (last visited Jan. 7, 2022).

## B.  The Trial

The evidence of the attack was largely uncontroverted at trial.  Both boys testified, as did Mr. Nez, and their stories were consistent.

In his motion for acquittal under Federal Rule of Criminal Procedure 29, counsel for Jackson conceded that the evidence was sufficient to support the assault charge. But he argued that the facts, as a matter of law, could not support a kidnapping conviction under 18 U.S.C. § 1201(a)(2).  Citing *United States v. Etsitty*, 130 F.3d 420 (9th Cir. 1997) (per curiam), *amended on denial of reh'g by* 140 F.3d 1274 (9th Cir. 1998), he contended that there was insufficient evidence that Jackson seized Alvina and that, "whatever seizure occurred, it certainly didn't occur beyond whatever beating there was."  The prosecutor responded that, under *Etsitty*, "all that is required here is a seizure," which he defined as "a restraint on someone's freedom of movement, preventing somebody from leaving if they want to."  The district court agreed with the government and permitted the jury to decide the kidnapping charge.

After receiving a version of the Ninth Circuit Model Jury Instruction on kidnapping, which did not include any duration requirement,[4] the jury returned a guilty verdict on all charges.  Jackson timely appealed.

---

[4] The judge instructed the jury as follows:

> The defendant is charged in Count 5 of the indictment with kidnapping within the Navajo Nation Indian Reservation in violation of Sections 1153 and 1201 of Title 18 of the United States Code.  In order for the defendant to be found guilty of that charge, the

## II.  DISCUSSION

### A.  Standard of Review

When reviewing for sufficiency of the evidence, we ask "whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  "When the issue of sufficiency of the evidence is preserved by making a motion for acquittal, we review the district court's denial of the motion de novo."  *United States v. Shea*, 493 F.3d 1110, 1114 (9th Cir. 2007).

### B.  As A Matter of Law, The Government Failed to Establish That Jackson "Kidnapped" Alvina Nez

This case requires us to define the limits of kidnapping under 18 U.S.C. § 1201(a)(2).[5]  As the Eleventh Circuit has

---

government must prove each of the following elements beyond a reasonable doubt:

First, the defendant kidnapped, seized, or confined Alvina Nez at a place within the confines of the Navajo Nation Indian Reservation, which I instruct you is in Indian Country;

Second, the defendant held Alvina Nez for any benefit; and

Third, the defendant is an Indian.

[5] 18 U.S.C. § 1201(a) reads, in relevant part:

explained, "state courts and an occasional federal court have struggled to interpret and enforce kidnapping laws, balancing a healthy respect for prosecutorial zeal against a recognition that the broadness of the statutory language requires an abundance of judicial discretion to limit its application to appropriate circumstances." *United States v. Howard*, 918 F.2d 1529, 1535 (11th Cir. 1990) (internal quotation marks omitted).

Fortunately, we do not approach the federal kidnapping statute with a blank slate. More than 75 years ago, the Supreme Court warned that "the broadness of the statutory language [defining kidnapping] does not permit us to tear the words out of their context, using the magic of lexigraphy to apply them to unattractive or immoral situations lacking . . . the very essence of the crime of kidnaping." *Chatwin v. United States*, 326 U.S. 455, 464 (1946). As the Court observed in reversing a conviction:

> **(a)** Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> . . . .
>
> **(2)** any such act against the person is done within the special maritime and territorial jurisdiction of the United States;
>
> . . . .
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

> Were we to sanction a careless concept of the crime of kidnaping or were we to disregard the background and setting of the Act the boundaries of potential liability would be lost in infinity. A loose construction of the statutory language conceivably could lead to the punishment of anyone who induced another to leave his surroundings and do some innocent or illegal act of benefit to the former . . . . The absurdity of such a result . . . is sufficient by itself to foreclose that construction.

*Id.* at 464–65.

We recognized the wisdom of this warning in *Etsitty*. *See* 130 F.3d at 427. There, the defendant lassoed the victim around the neck, dragged her on the ground for twenty feet, repeatedly attempted to tie her up and gag her, knocked her unconscious, and then tried to take her away on his horse. *Id.* at 423. Under these facts, we concluded that the government proved a violation of § 1201(a)(2), as "a reasonable trier of fact" could find that the defendant seized the victim "for a substantial period of time." *Id.* at 427. But we repeated *Chatwin*'s warning about the danger of broadening kidnapping "into a secondary charge wherever there is a detention accompanying another crime." *Id.*

In a powerful concurrence, Judge Kleinfeld outlined the problems with reading the statute too broadly: "Kidnapping, punishable by life imprisonment, is not committed whenever someone is held against their will, as when one person grabs another to do harm, and the victim says 'Let me go.'" *Id.* at 428 (Kleinfeld, J., concurring). Otherwise, prosecutors would have "unfettered discretion to charge the same

conduct, such as impeding certain individuals, *see* 18 U.S.C. § 111(a)(1), as a mere misdemeanor or a life imprisonment felony." *Id.* To avoid these consequences, he explained, "[m]eaning has to be given to the phrase 'and holds' beyond the conduct already denoted by 'seizes' and 'confines,'" such that "'an appreciable period' of holding is necessary to establish the offense." *Id.* at 428–29 (first quoting 18 U.S.C. § 1201(a); and then quoting *Chatwin*, 326 U.S. at 460).

This case brings the warnings of *Chatwin* and *Etsitty* to the fore. The facts here, viewed in the light most favorable to the government, do not bear the hallmarks of a "true kidnaping[]." *Chatwin*, 326 U.S. at 464. To conclude otherwise would convert the kidnapping statute into a steroidal version of the assault laws—exactly what the Supreme Court and our own court in *Etsitty* warned against. And not just assault laws: The government at oral argument agreed that, under its theory, a garden-variety, three-minute robbery could be a kidnapping—although it conceded, somewhat contradictorily, that the inquiry requires a "highly fact-specific determination."

Accepting, then, that kidnapping requires more than a transitory holding, and more than a simple mugging or assault—accepting, in other words, that the facts must reflect the "essence of the crime of kidnaping," *Chatwin*, 326 U.S. at 464—the remaining question is how to distinguish facts that constitute kidnapping from those that do not. And again, we do not start with a blank slate. In *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 224 (3d Cir. 1979), the Third Circuit analyzed when an action qualifies as a kidnapping under a very similar statute. After surveying *Chatwin* and a host of state court decisions, *id.* at 226–27, it distilled four factors to guide courts and juries in defining kidnapping, absent legislative history to the contrary:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Id.* at 227.

Other circuits have acknowledged the wisdom of the *Berry* factors or outright adopted them to interpret the federal kidnapping statute. *See, e.g.*, *Howard*, 918 F.2d at 1535–37 (adopting and applying *Berry* factors to overturn federal kidnapping conviction); *United States v. Gabaldon*, 389 F.3d 1090, 1097 (10th Cir. 2004) (finding "much in the *Berry* test to commend its use in a § 1201(a)(2) situation"); *see also United States v. Corralez*, 61 M.J. 737, 748–49 (A.F. Ct. Crim. App. 2005) (applying similar factors to the military offense because converting simple assaults into kidnapping "reflects precisely the 'careless concept of the crime' of kidnapping that has long been condemned as a misuse of the offense" (quoting *Chatwin*, 326 U.S. at 464)).[6]

---

[6] The Model Penal Code is similar, as it requires confinement "for a substantial period." Model Penal Code § 212.1 (Am. L. Inst. 1985). Its Commentary is also in accord:

> The central problem in the law of kidnapping is to restrict the drastic sanctions authorized for this offense

We, too, find much in the *Berry* factors to commend their use. The first factor, the duration of the holding, allows us to give meaning "to the phrase 'and holds' beyond the conduct already denoted by 'seizes' and 'confines.'" *Etsitty*, 130 F.3d at 428 (Kleinfeld, J., concurring). The second and third factors prevent kidnapping from broadening "into a secondary charge wherever there is a detention

> to instances of misbehavior warranting such punishment. . . .
>
> . . . .
>
> . . . [F]or example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnapping, even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong. . . .
>
> . . . Experience reveals numerous instances of abusive prosecution under expansive kidnapping statutes for conduct that a rational and mature penal law would have treated as another crime.

Model Penal Code & Comments. § 212.1 cmt. 2 (Am. L. Inst. 1980) (footnotes omitted).

Additionally, as the *Berry* opinion explains, several state courts have limited their kidnapping statutes in a similar manner. *See, e.g.*, *Weber v. State*, 547 A.2d 948, 957–60 (Del. 1988); *People v. Daniels*, 459 P.2d 225, 231–38 (Cal. 1969) (in bank); *People v. Levy*, 204 N.E.2d 842, 843–45 (N.Y. 1965). States and local governments are not unanimous in this respect. *See, e.g.*, *State v. Jacobs*, 380 P.2d 998, 1002 (Ariz. 1963) (in banc); *Ruffin v. United States*, 219 A.3d 997, 1005–06 (D.C. 2019). For a recent (and exhaustive) criticism of a broad reading of kidnapping, see *Cardozo v. United States*, 255 A.3d 979, 988–1000 (D.C. 2021) (Deahl, J., concurring).

accompanying another crime." *Id.* at 427 (majority opinion). And the combination of all four factors provides a workable framework to ensure that the "boundaries of potential liability" do not become "lost in infinity." *Chatwin*, 326 U.S. at 464.

The government's cases do not persuade us otherwise. The government argued, based on a laundry list of out-of-circuit authority, that kidnappings only require brief holdings, and that those holdings may be incidental to other crimes.[7] But those cases all dealt with a different issue—the Double Jeopardy Clause—and those courts all properly found that kidnapping does not "merge" with assault, air piracy, robbery, or Mann Act violations. Here, we do not ask whether kidnapping and assault "merge" as a matter of double jeopardy; *Etsitty* already answered that question in the negative. 130 F.3d at 427. Rather, we ask whether the facts of this case (which happen to look like assault) satisfy the elements of 18 U.S.C. § 1201(a)(2) as a matter of statutory interpretation. The government's double jeopardy cases have no bearing on this question.[8]

The government did cite *United States v. DeLaMotte*, 434 F.2d 289 (2d Cir. 1970), which is not a double jeopardy case and approaches the issue here. The defendant in

---

[7] *See United States v. Jones*, 808 F.2d 561, 565–66 (7th Cir. 1986); *United States v. Dixon*, 592 F.2d 329, 339–40 (6th Cir. 1979); *United States v. Baker*, 419 F.2d 83, 89 (2d Cir. 1969).

[8] *United States v. Lowe*, 145 F.3d 45 (1st Cir. 1998), uncited by the government, reads like the aforementioned double jeopardy cases, *see supra* note 7, but it is not explicit about the double jeopardy nature of its analysis. To the extent that *Lowe* is inconsistent with or disagrees with *Berry* and *Howard*, *see* 145 F.3d at 52, we reject *Lowe* as comparatively unpersuasive.

*DeLaMotte* argued that, although his conduct "literally f[ell] within the requirements of the kidnapping statute," the court should limit that statute based on *Chatwin*. *Id.* at 292. However, the element at issue there was not the duration of the holding, but the motive or benefit derived from the kidnapping. *See id.* And the Second Circuit noted that the defendant's conduct was "no momentary detention in the course of a holdup . . . but an extended, planned detention." *Id.* at 293. Thus, *DeLaMotte* is neither precisely on point nor necessarily incompatible with *Berry* and *Howard*.

Accordingly, we hold that, in kidnapping prosecutions under 18 U.S.C. § 1201(a)(2), courts should consider the *Berry* factors to evaluate whether the charged conduct constitutes kidnapping. This is a factual inquiry, taken up during a Rule 29 motion and, if appropriate based on the circumstances of the case, incorporated into jury instructions.[9]

Applying these factors, we conclude that the government failed to prove beyond a reasonable doubt that a kidnapping occurred. The first factor, the duration of the holding, weighs against kidnapping, as a seven-minute holding would be quite brief on the spectrum of possible kidnappings. Indeed, the conduct here was a far cry from the "substantial period of time" for which the defendant in *Etsitty* confined the victim. 130 F.3d at 427; *see also Corralez*, 61 M.J.

---

[9] We do not fault the district court for failing to address the *Berry* factors during Jackson's motion for acquittal or incorporate them into the Model Instructions, *see supra* note 4, as the parties failed to cite *Berry* at trial. Still, Jackson sufficiently preserved his core argument—that kidnapping requires more than a brief holding incidental to assault—in his motion for acquittal, and reviewing the sufficiency of the evidence de novo, *see Shea*, 493 F.3d at 1114, we conclude that the *Berry* factors should govern our analysis.

at 749 (finding that a five-minute confinement weighed against kidnapping).

The second and third factors—the presence of a separate offense and the degree to which the holding was inherent in the other offense—strongly indicate that there was no kidnapping.  The primary conduct here was an assault causing serious bodily injury, which inherently requires the defendant to keep the victim in close enough proximity to inflict the injuries. *See Berry*, 604 F.2d at 228 ("Necessarily implicit in [assault] is some limited confinement or asportation.").  The conduct here did not go beyond that.  No additional holding occurred; the assault involved no asportation, no external restraints, no planned detention, and no restrictions on movement beyond the beating itself.  Any pulling or dragging was inseparable from the overall assault. *See also Corralez*, 61 M.J. at 749 (finding confinement inherent in assaults where the defendant hit and choked victim, pulled her hair, held her seatbelt to prevent her from leaving, and pushed her from room to room).

The fourth factor, whether the holding created significant danger independent of the separate offense, also weighs against classifying the conduct as kidnapping.  The danger to Alvina came from the assault: the hitting, punching, yanking, and dragging that left her bruised and bleeding.  To contrast the conduct here with more extreme examples, this case did not involve a lengthy detention jeopardizing a victim's health or external restraints causing additional injuries.  Thus, to the extent that there was any confinement separate from the assault (a dubious premise, as discussed previously), it was not an independent source of significant danger.

In light of these factors, no reasonable factfinder could have found the necessary elements of kidnapping beyond a

reasonable doubt.   At best, the facts demonstrate that Jackson assaulted Alvina, a crime for which the jury properly convicted him.  But they are insufficient, as a matter of law, to support Jackson's conviction for kidnapping. Accordingly, we reverse that conviction and remand for resentencing.

**REVERSED          AND          REMANDED          FOR RESENTENCING.**