**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MALIK SMITH, a/k/a Michael
Marvin Montana, Tarid M. Smith,
Tarik N. Smith, Tarik Smith, Tarik
Marchand Smith, Tarik Malik
Smith, Milik and Tarid Smith,
          *Defendant-Appellant.*

No. 05-50375

D.C. No.
CR-03-00728-PA-01

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
April 3, 2006—Pasadena, California
Memorandum Filed May 26, 2006
Memorandum Withdrawn March 31, 2008

Filed March 31, 2008

Before: Dorothy W. Nelson and Diarmuid F. O'Scannlain,
Circuit Judges, and Robert C. Jones,* District Judge.

Opinion by Judge O'Scannlain;
Dissent by Judge D.W. Nelson

---

*The Honorable Robert C. Jones, District Judge for the District of
Nevada, sitting by designation.

## COUNSEL

Davina T. Chen, Deputy Federal Public Defender, Los Angeles, California, argued the cause for the defendant-appellant, and filed briefs; Maria E. Stratton, Federal Public Defender, Los Angeles, California, was on the briefs.

Craig H. Missakian, Assistant U.S. Attorney, Los Angeles, California, argued the cause for the plaintiff-appellee, and filed a brief; Debra Wong Yang, U.S. Attorney, and Thomas P. O'Brien, Assistant U.S. Attorney, were on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must primarily decide whether a jury instruction impermissibly relieved the government of its burden to prove beyond a reasonable doubt that the defendant used a "dangerous weapon," an essential element of the crime.

I

In August 1999, four inmates at the federal penitentiary in Lompoc, California, were in the recreation cage of the Special Housing Unit: Malik Smith, Charles Wesley Helem, George W. Jeffries, and Milton Johnson. After hearing scuffling noises, prison guards went to the cage, where they saw Smith stabbing Jeffries with a sharpened plastic object while Helem held him from behind. The object snapped into two pieces, but Smith continued to use one of the pieces to stab Jeffries.

The object, a prison-made knife, was about six inches long, flat, and sharpened to a point at one end. Prison officials later found a similar knife wrapped in a towel in the recreation cage. The knives had been made by melting down very thin Styrofoam trays and forming them into a hard plastic.

After the incident, Reynaldo Nisperos, a physician's assistant employed by the prison, examined the four inmates for injuries. Helem and Johnson had none. Smith had injuries on the palm of his right hand and on the inside of his lip. Jeffries had sustained several cuts, one of which was about eight centimeters long and pierced the skin of Jeffries's right eyelid. Another cut on the face was approximately ten centimeters long. Nisperios also noted a superficial abrasion on Jeffries's neck that was about six centimeters long and multiple superficial abrasions and laceration on Jeffries's lower back. According to Jeffries, either Smith or Helm yelled, "You're hot, you're hot" right before the attack began. In prison slang, "hot" meant that Jeffries was considered a snitch.

The government did not file criminal charges immediately after the incident, although Smith was sanctioned administratively by the prison. After Smith was released in 2002, the government indicted Smith for the assault. The case proceeded to trial.

At Smith's trial, Lieutenant Jaime Bengford explained his belief that the weapon had been made by melting down accumulated thin plastic trays on which prison meals are served. Nisperos described the injuries Jeffries sustained and the jury viewed photographs of them. Nisperos also testified that the weapon could cause "very fatal injuries." He specifically stated that if the knife were used to hit an internal organ or a major artery, like the carotid artery or the jugular vein, it could cause "major injuries." The district court allowed Nisperos to render this opinion over Smith's objection that Nisperos lacked sufficient expertise to qualify as an expert because he was not a doctor and twice had failed the exam to

qualify as a doctor. In determining that Nisperos was qualified to give his opinion, the court relied on Nisperos's medical degree from the Philippines, his bachelor's degree in criminology, and his testimony that he had treated inmates for wounds inflicted by prison-made knives 50 to 100 times during his nineteen years at the prison.

At the close of the evidence, Smith moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. On the assault with intent to commit murder charge, he argued that the government had failed to prove he intended to commit murder. On the assault with a dangerous weapon charge, he argued that the government had failed to show that he had assaulted Jeffries or that the assault was not without just cause. The district court denied the motion.

The court instructed the jury as to three offenses: assault with intent to commit murder, assault with a dangerous weapon, and the lesser included offense of simple assault. The instructions on the elements of assault with a dangerous weapon provided that the third element the government had to prove beyond a reasonable doubt was that "the defendant used a prison-made knife." The immediately preceding paragraph of the instructions advised the jury that Smith was "charged . . . with assault with a dangerous weapon," and the immediately following sentence instructed the jury that "[a] prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury." Smith objected to the instructions, contending that the third element usurped the jury's role as finder of fact as to whether the knife qualified as a "dangerous weapon." Based on these instructions, the jury convicted Smith of assault with a dangerous weapon. The jury, however, found Smith not guilty of assault with intent to commit murder.

Smith's timely appeal of his conviction followed.[1]

---

[1]Smith also challenges his sentence. We decide such separate claims in a concurrently filed memorandum disposition. *See United States v. Smith*, No. 05-50375 (9th Cir. March 31, 2008) (mem.).

II

Smith was charged with assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), which has three elements: (1) that the defendant intentionally struck or wounded the victim; (2) that the defendant acted with the specific intent to do bodily harm; and (3) that the defendant used a "dangerous weapon." *United States v. Etsitty*, 130 F.3d 420, 427 (9th Cir. 1997) (per curiam); 18 U.S.C. § 113(a)(3). A "dangerous weapon," we have held, includes not only objects that are dangerous per se, but also objects used in a way capable of causing death or serious bodily injury. *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994). The statute, in turn, defines "serious bodily injury" as any bodily injury that involves "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *See* 18 U.S.C. §§ 113(b)(2), 1365(h)(3). "[W]hat constitutes a dangerous weapon in a particular case is a question of fact for the jury." *Riggins*, 40 F.3d at 1057 (citing *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988)).

Smith argues on appeal that the following jury instruction, which tracks Ninth Circuit Model Criminal Jury Instruction 8.5,[2]

---

[2]That model instruction provides:

The defendant is charged in [Count ___ of] the indictment with assault with a dangerous weapon in violation of Section 113(a)(3) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant intentionally [struck or wounded [victim]] [used a display of force that reasonably caused [victim] to fear immediate bodily harm];

Second, the defendant acted with the specific intent to do bodily harm to [victim]; and

impermissibly relieved the government of its burden to prove beyond a reasonable doubt that he used a "dangerous weapon":

> The defendant is charged in Count 2 of the indictment with assault with a dangerous weapon, in violation of Section 113(a)(3) of Title 18 of the United States Code.
>
> In order for the defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt: First, the defendant intentionally struck or wounded George Jeffries; second, the defendant acted with the specific intent to do bodily harm to George Jeffries; and, third, the defendant used a prison-made knife.
>
> A prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

Because we disagree that these instructions removed an element of the crime, we affirm.

## A

**[1]** "[T]he Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, when a jury instruc-

---

Third, the defendant used a [weapon].

[A [weapon] is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.]

9th Cir. Model Crim. Jury Inst. 8.5 (2003).

tion is challenged on appeal, our task is to determine whether the trial court's instruction relieved the state of this essential burden as to any individual element of the crime of which the defendant has been convicted. *Medley v. Runnells*, 506 F.3d 857, 864 (9th Cir. 2007) (en banc).

**[2]** Nevertheless, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000); *see also United States v. Brooksby*, 668 F.2d 1102, 1104 (9th Cir. 1982) (quoting *Cupp v. Naughten*, 414 U.S. 144, 146-47 (1973)). Moreover, "we do not engage in a technical parsing of [isolated] language of the instructions, but instead approach the instructions in the same way that the jury would—with a '*commonsense understanding* of the instructions in the light of all that has taken place at the trial.' " *Johnson v. Texas*, 509 U.S. 350, 368 (1993) (emphasis added) (quoting *Boyde v. California*, 494 U.S. 370, 381 (1990)). "In reviewing jury instructions, the relevant inquiry is whether the instructions *as a whole are misleading or inadequate* to guide the jury's deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (emphasis added) (citing *United States v. Moore*, 109 F.3d 1456, 1465 (9th Cir.) (en banc), *cert. denied* 522 U.S. 836 (1997)). The Supreme Court has cautioned that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). If the jury instructions "as a whole [are] ambiguous, the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.' " *Id.* (internal quotation marks omitted) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

B

**[3]** While it seems clear that the instructions would have been improved if the words "prison-made knife" in the ele-

ments list were replaced with "dangerous weapon," we are persuaded that the instructions as a whole were not misleading or inadequate to guide the jury's deliberation and that there is no "reasonable likelihood" that the jury convicted Smith without proof beyond a reasonable doubt that he used a "dangerous weapon." First, there is a close connection between the special instruction requiring the jury to find proof beyond a reasonable doubt that the defendant used a "prison-made knife" and the immediately following instruction informing the jury that "a prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury." Indeed, the two instructions appear in directly adjacent sentences and the latter instruction logically appears to clarify the former. Viewed with the "commonsense understanding" required by *Johnson*, 509 U.S. at 368, the tight connection between the "prison-made knife" element and the immediately following passage describing a "dangerous weapon" persuades us that it is not reasonably likely that the jury believed that it could convict Smith without proof beyond a reasonable doubt that the "prison made knife" was "used in a way that is capable of causing death or serious bodily injury." In other words, the final instruction defining a "dangerous weapon" should be viewed as a clarifying instruction, part-and-parcel of the third element instruction in the elements list. A contrary conclusion would require the jury to treat such instruction as mere surplusage even though the district court ordered the jurors to "follow all of [the instructions] and not single out some and ignore others. They are all equally important."

**[4]** Second, the district court immediately prefaced the elements list with an instruction stating the crime charged: "The defendant is charged in Count 2 of the indictment with assault with a *dangerous weapon.*" (emphasis added.)

**[5]** Finally, in charging the jury on the lesser included offense of simple assault, the instructions again emphasized that the jury could only convict Smith for assault with a dan-

gerous weapon if it was "convinced beyond a reasonable doubt that [Smith was] guilty of . . . assault with a *dangerous weapon* with the intent to do bodily harm." (emphasis added.)

As a consequence, we are satisfied that this instruction is quite distinct from the jury instruction we found deficient in *Medley*. In that case, the defendant was convicted in state court of murder and received a twenty-year sentencing enhancement for the discharge of a firearm during the commission of a felony. 506 F.3d at 860. At trial, the judge plainly instructed the jury that the defendant's flare gun met the sentencing enhancement statute's definition of a "firearm." *Id.* at 859. On habeas review, we held that the trial judge committed constitutional error because his instruction "took a critical issue of fact away from the jury" and relieved the prosecution of its duty to prove beyond a reasonable doubt that the defendant used a firearm. *Id.* at 867. But in this case, the district court never took such a critical issue away from the jury's determination because the district court never instructed the jury that Smith's prison-made knife was a dangerous weapon.

Instead, the district court explained to the jury that the government was required to prove beyond a reasonable doubt that Smith used a prison-made knife and, in its very next sentence, instructed that "[a] prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury." We are persuaded that the tight connection between these two sentences prevented members of the jury from making the incorrect assumption that they could convict Smith without proof beyond a reasonable doubt that the prison-made knife he used to stab Jeffries was, in fact, a dangerous weapon.

C

Furthermore, contrary to Smith's argument, we are not persuaded that our prior decision in *Brooksby* compels a contrary

conclusion. In *Brooksby*, the defendant was charged with willfully making and subscribing false tax returns, in violation of 26 U.S.C. § 7206(1). *Brooksby*, 668 F.2d 1102. Although "willfully" is an essential element of that offense, the district court's special instructions wholly omitted any reference to "willfully" in the elements list. *Id*. *Brooksby* concluded that the district court "correctly stated the law by reading the indictment and the statute and defining the term 'willfully', but incorrectly listed only three of the elements that would be necessary to be proven beyond a reasonable doubt in order to convict the defendant." *Id*. at 1105. *Brooksby* thus held that "notwithstanding that the indictment, the statute[,] and an instruction on 'willfully' were read to the jury, the failure to instruct [the jurors] that 'willfulness' was an essential element of the crime prejudiced the defendant." *Id*.

Viewed with a commonsense understanding, the jury instructions as a whole in *Brooksby* were indeed inadequate and misleading. The challenged elements list contained neither the required willfulness element nor stated that any particular *mens rea* was even required. The only reference to "willfully" was found in a later instruction defining that term and indicating that the government had the burden to prove it. That later definition of "willfully" failed to clarify any element within the elements list, and was not at all connected to any element of the list.

**[6]** In contrast to the instructions in *Brooksby*, the district court's instructions here contained a close and articulated link from the elements list to the definition of a "dangerous weapon" that immediately followed. Indeed, as discussed above, the elements list expressly required the jury to find proof beyond a reasonable doubt that Smith used a "prison-made knife" and the immediately following instruction clearly advised the jury when a "prison-made knife" would constitute a "dangerous weapon" sufficient to sustain the charge. Because of this explicit and close connection between the reference in the elements list and the subsequent definition,

Smith's jury instructions as a whole did not suffer from the same constitutional flaw as those in *Brooksby*.

## D

**[7]** Accordingly, we conclude that the instructions did not relieve the government of the burden of proof on the "critical question" of whether Smith used a dangerous weapon. *Medley*, 506 F.3d at 864. We are persuaded that the instructions as a whole were not misleading or inadequate to guide the jury's deliberation and we do not believe that there is a "reasonable likelihood" that the jury convicted Smith without proof beyond a reasonable doubt that the prison-made knife the jury determined that he used was, in fact, a "dangerous weapon."[3]

## III

We now turn to Smith's argument that the evidence was insufficient to support his conviction for assault with a dangerous weapon.

## A

We must first consider Smith's assertion that district court abused its discretion by allowing Nisperos to testify as an expert witness. *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). Specifically, Nisperos testified that "if someone was stabbed in a vital organ with that prison-made knife," the injury could be fatal.

**[8]** Fed. R. Evid. 702 governs the admissibility of expert testi-

---

[3]Although we uphold the jury instruction delivered in this case, we recognize that even a legally sufficient instruction could benefit from a more precise phrasing. Our Office of the Circuit Executive may wish to bring this decision to the attention of the Ninth Circuit Jury Instructions Committee.

mony.[4] Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), "only relevant and reliable expert opinion testimony is admissible. Expert opinion testimony is relevant if the knowledge underlying it has a 'valid . . . connection to the pertinent inquiry.' And it is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.' " *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (footnotes omitted).

**[9]** We are persuaded that the district court did not abuse its discretion here. Nisperos's expert opinion that if the plastic prison-made knife were used to strike a vital organ, it could be fatal was *relevant* to the pertinent inquiry whether that same knife was a "dangerous weapon." Moreover, we are persuaded that Nisperos's education and experience provided a *reliable* basis for him to express that opinion. *See United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Nisperos completed medical school in the Phillippines and had special knowledge based on his experience working at the prison for almost 20 years, during which time he treated between 50 and 100 injuries inflicted by prison-made knives. Accordingly, the district court's determination that Nisperos's education and experience were sufficient to qualify him as an expert in this case was not an abuse of discretion.

**[10]** We also reject as unpersuasive Smith's argument that the district court abused its discretion because Nisperos was a physician's assistant rather than a doctor, had failed the

---

[4]"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

medical board examinations twice, and had never testified as a forensic expert before. That Nisperos had never before testified as an expert witness does not preclude his opining as an expert in this case. Similarly, we are unpersuaded that Nisperos was unqualified to testify as an expert in this case because he is not a medical doctor and because he twice had failed the medical board examination. Fed. R. Evid. 702 refers only to "a witness qualified as an expert by knowledge, skill, experience, training, or education." No specific credentials or qualifications are mentioned. Moreover, we have previously held that an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements. *See United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993).

B

We now consider whether the evidence in this case, including Nisperos's expert testimony, was sufficient to support Smith's conviction. A conviction will be sustained if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To support the conviction for assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), the government was required to prove beyond a reasonable doubt that Smith (1) intentionally struck or wounded the victim, (2) acted with the specific intent to do bodily harm, and (3) used a "dangerous weapon." *Etsitty*, 130 F.3d at 427. On appeal, Smith only challenges the sufficiency of the evidence with respect to the third element: that he used a "dangerous weapon."

[11] A "dangerous weapon" includes not only objects that are dangerous per se, but also objects used in a way capable of causing death or serious bodily injury. *Riggins*, 40 F.3d at 1057. "Serious bodily injury" is defined as any bodily injury that involves "(A) a substantial risk of death; (B) extreme

physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. §§ 113(b)(2), 1365(h)(3). Thus, we must consider whether any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the prison-made knife fashioned from Styrofoam trays was capable of inflicting serious bodily injury.[5]

[12] Smith argues that the evidence was insufficient to support such a conclusion, pointing to testimony that the prison staff had not previously considered the very thin plastic Styrofoam meal trays—the raw materials used to make the knife—to be potential weapons. This argument is without merit. We have previously held that a shoe, which like a Styrofoam tray in this case may not be readily identified as potential weapon, could, as a matter of law, be a dangerous weapon. *Riggins*, 40 F.3d at 1057. Similarly, we cannot accept the argument that the evidence was insufficient to support a finding that Smith used a dangerous weapon simply because the prison-made knife had its genesis in otherwise innocuous Styrofoam meal trays. Smith altered these trays from the original state to create a hard, flat object about six inches in length and sharpened to a point to be used as a weapon.

Smith also contends that the evidence was insufficient to support a finding that the knife was a dangerous weapon because testimony established that Jeffries's injuries consisted of lacerations and abrasions requiring only minor first aid. We are equally unpersuaded. The critical inquiry is not whether the prison-made knife inflicted "seriously bodily injury," but whether it was *capable* of inflicting such injury. That the injuries in this case required only minor first aid is of no moment.

---

[5]Because Smith did not raise this specific insufficiency of the evidence claim in his Fed. R. Crim. P. 29 motion or in his new trial motion, we review for plain error. *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004).

We have previously rejected an argument that a belt and shoe could not be a dangerous weapon because in that particular case they only inflicted welts and bruises, nothing more. *Id.* at 1057.

**[13]** Rather, we are persuaded that the evidence presented in this case was sufficient for a rational trier of fact to conclude that the prison-made knife was a dangerous weapon. The testimony and photographs of the prison-made knife, as well as the knife itself, establish that it was formed by melting down Styrofoam trays and hardening them into a flat plastic material of about six inches in length and sharpened to a point. Moreover, testimony and photographs establish that, while Jeffries's injuries required only minor first aid, several lacerations cut through the skin of his eyelid and the top of his head. Nisperos referred to these cuts as a "full skin thickness." As Nisperos further testified, two of those wounds came close to cutting Jeffries's right eye: one of those cuts was about ten centimeters inches long to the upper eyelid, and another was about eight centimeters long and pierced the skin of his right eyelid. Nisperios also noted a superficial abrasion on Jeffries's neck that was about six centimeters long and multiple superficial abrasions and lacerations on Jeffries's lower back. Finally, Nisperos provided expert testimony that "if someone was stabbed in a vital organ with that prison-made knife the injury could be fatal." Considering all of the evidence presented at his trial in the light most favorable to the prosecution, we are persuaded that a rational trier of fact could conclude that the prison-made knife was capable of causing "serious bodily injury" and therefore was a "dangerous weapon." *See Riggins*, 40 F.3d at 1057.

## IV

Because the jury instructions in this case did not relieve the government of its burden to prove beyond a reasonable doubt that Smith used a "dangerous weapon," and because the evi-

dence was sufficient to support the verdict, we reject Smith's challenge to his conviction.

**AFFIRMED**.

---

D.W. NELSON, Senior Circuit Judge, Dissenting:

## I.

The rationale for reversing Smith's conviction is straightforward. Smith was convicted of assault with a dangerous weapon for attacking a fellow prisoner with a knife made out of plastic and Styrofoam. The knife broke during the assault, resulting in injuries requiring only "minor first aid." The principal defense at trial was that the plastic knife was not a "dangerous weapon" because it was incapable, as used, of causing death or serious bodily injury.

The trial court gave the following jury instruction:

> The defendant is charged in Count Two of the indictment with assault with a dangerous weapon, in violation of Section 113(a)(3) of Title 18 of the United States Code.

> In order for the defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt: First, the defendant intentionally struck or wounded George Jeffries; Second, the defendant acted with the specific intent to do bodily harm to George Jeffries; and Third, the defendant used a *prison-made knife*.

> A prison-made knife is a dangerous weapon if it is used in a way that is capable of causing death or serious injury.

(emphasis added).[1]

Smith objected to the instruction because it did not require the jury to find him guilty of the offense beyond a reasonable doubt. Indeed, the three elements, as enumerated in the instruction, do not even include the term "dangerous weapon," even though use of such an instrument is an element of the offense. *See* 18 U.S.C. § 113(a)(3). Furthermore, it is unclear how the jurors used the last statement of the instruction, if at all, in their deliberations. They could have interpreted the statement as a legal conclusion—that *this* prison-made knife *was* a dangerous weapon—which would have completely usurped the jury's role as fact-finder regarding the principal element for which Smith mounted a defense. *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994).

Moreover, even if the jury did not interpret it as a statement of fact, the instruction does not require the jury to find *beyond a reasonable doubt* that the plastic and Styrofoam knife was capable of causing death or serious bodily injury. In fact, the instruction specifically listed three elements that the jury was required to find beyond a reasonable doubt, and the fact that Smith used a "dangerous weapon" is omitted from that list. Thus, the last statement in the instruction could have been interpreted to be not an element of the crime, but instead a statement merely intended to clarify an element of the offense without requiring strict adherence to the beyond-a-reasonable-doubt standard.

Smith proposed an alternative instruction, requiring that the jury find, as the third element, that he "used a dangerous weapon," and that a dangerous weapon is "an object . . . used in a way that is capable of causing death or serious bodily

---

[1]This mirrors Ninth Circuit Model Criminal Jury Instruction 8.5. For reasons explained herein, the model instruction is insufficient and should be abandoned in favor of an instruction similar to that used in other circuits.

injury." Thus, he suggested that the court replace "prison-made knife" with "dangerous weapon" at both places the term appeared in the instruction. Although it would have been a minor textual change, the effect would have been significant, as it would have avoided the insufficiencies discussed above, and it would have incorporated the terms of the offense with which Smith was charged: assault with a *dangerous weapon*.

## II.

Our recent en banc decision in *Medley v. Runnels* strongly suggests that Smith's conviction should not be upheld. 506 F.3d 857 (9th Cir. 2007) (en banc). Medley was convicted in state court of murder and received a twenty-year enhancement for discharge of a firearm during commission of a felony. *Id.* at 860. At trial, Medley argued that a flare gun did not qualify as a firearm. *Id.* Under California Penal Code § 12001(b), a firearm is defined as "any device designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion, or other form of combustion." The judge was satisfied that a flare gun fell under this definition, and instructed the jury that "[a] flare gun is a firearm." *Id.* Medley did not challenge this instruction at trial, but in subsequent habeas petitions, argued that it violated his due process rights. *Id.* The question before the en banc panel was: "Did the trial judge's instruction that '[a] flare gun is a firearm' relieve the State of the burden of proof . . . on the critical question of whether Medley's flare gun was designed to be used as a weapon?" *Id.* at 864. We stated:

> By instructing the jury that a flare gun is a firearm, the court did not permit the jury to make the factual determination as to whether the object used by Medley was designed to be used as a weapon and expels a projectile through a barrel by the fore of an explosion.

*Id.* The error was not harmless because we could not "conclude that the jury would have convicted Medley of use of a

'firearm' " had the judge properly instructed the jury on each element of the offense. *Id.* at 867. We ultimately held:

> Because "designed to be used as a weapon" is an element of the offense and an issue of fact, the trial court's direction to the jury that a flare gun is a firearm was constitutional error. This instruction took a critical issue of fact away from the jury in violation of clearly established constitutional law. Accordingly, Medley's enhancement . . . must be vacated.

*Id.* (internal citations omitted).

*Medley* should control the outcome in this case. In the majority's view, this case can be distinguished because "the district court never took such a critical issue away from the jury's determination because the district court never instructed the jury that Smith's prison-made knife was a dangerous weapon." Maj. Op. at 3256. Although the error here may not have been as egregious as the flawed instruction given in *Medley*, the effect was the same — the prosecution's burden of proof was blurred. Here, whether Smith "used a dangerous weapon" is an element of the offense and an issue of fact. Just as the trial court in *Medley* committed constitutional error by instructing the jury that a flare-gun is a firearm, the trial court here erred by obscuring the burden of proof on whether a prison-made knife is a "dangerous weapon." The trial court's direction was fatally flawed because it impeded the jury's ability to ascertain for itself whether this prison-made knife was, indeed, a "dangerous weapon." *Medley* makes clear that such an instruction is a reversible error because it relieved the State of its burden of proof on an essential element of the crime. 506 F.3d at 867.

## III.

Our holding in *United States v. Brooksby*, 668 F.2d 1102 (9th Cir. 1982), also counsels us to reverse Smith's convic-

tion. In *Brooksby*, the trial court omitted "willfulness" from a jury instruction regarding an offense of which "willfulness" was an element. *Id.* at 1104. Instead, the court read the indictment, the statute, and two separate instructions regarding willfulness. *Id.* at 1105. We determined that an instruction that omits a key element of the offense cannot be cured merely by using a patch-work approach. *Id.* We held that while "the court correctly stated the law by reading the indictment and the statute and defining the term 'willfully' . . . [it] incorrectly listed only three of the elements that would be necessary to be proven beyond a reasonable doubt in order to convict the defendant." *Id.*

Moreover, in *Brooksby*, as here, the defendant objected to the instruction as given and proposed an additional instruction to cure the deficiency in the court's instruction. *Id.* at 1103-04. In Smith's case the court did not even instruct the jury that the government shouldered the burden of proving beyond a reasonable doubt a key element of the offense (i.e., that Smith used a dangerous weapon)—an instruction that the court *did* give in *Brooksby*. Thus, if anything, the error in Smith's case is more significant than that in *Brooksby*.

The majority concedes that the instruction was not ideal, but it argues that the instruction *as a whole* was not misleading, citing our holding in *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999). I disagree. While the instruction need not be "artful," it must ensure that the government proved every element to a unanimous jury beyond a reasonable doubt, and it must be held invalid if there is "a reasonable likelihood that the jury . . . applied the . . . instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotations omitted). For the reasons explained heretofore, there is at least a reasonable likelihood that the jury applied the instruction improperly, especially when we consider that "dangerous weapon" does not appear anywhere in the instruction as an element of the crime.

The majority's argument that there is a "close connection" between the last statement in the instruction and the third element of the offense is also unavailing. Although the two statements are related, as already explained, the context in which they are used easily distinguishes them: the former requires a finding beyond a reasonable doubt while the latter appears to require something less (perhaps even no finding at all). Therefore, the majority's assertion that the jury would have had to interpret the last statement as "mere surplusage" is incorrect.

Similarly, the majority's argument that the court's preliminary statement to the jury that the charge is "assault with a dangerous weapon" does not cure the instruction. While it stated that Smith was charged with "assault with a dangerous weapon, in violation of Section 113(a)(3)," there is no further mention of the statute or its requirements in the instruction, and it cannot be true that merely reciting the charge is sufficient for instructing the jury on what elements must be proven beyond a reasonable doubt.

Additionally, it is unreasonable to conclude that the instruction was harmless. *See Medley*, 506 F.3d at 867 (instruction that takes away "critical issue of fact away from the jury" is reversible error). Smith's primary defense was that the plastic and Styrofoam knife was incapable of causing serious bodily harm, and that, therefore, it was not a "dangerous weapon." Indeed, at trial, each side offered substantial testimony regarding that specific issue, and on appeal, other than pointing to the erroneous jury instruction, Smith only challenges his conviction on the ground that the evidence was insufficient to prove he used a "dangerous weapon." Although the majority is correct that jury instructions are to be considered as a whole, "they must also be considered in context and as part of the whole trial." *Brooksby*, 668 F.2d at 1105 (quoting *United States v. Elksnis*, 528 F.2d 236, 238 (9th Cir. 1975)). Thus, as was the case in *Brooksby*, because the defendant's primary defense concerned an element of the crime that was

not sufficiently addressed in the jury instruction, error concerning that instruction cannot be deemed harmless.

## IV.

For the foregoing reasons, I do not believe that we can conclude that the flawed instruction in the instant case was "harmless" beyond a reasonable doubt or that there is no "reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." *Estelle*, 541 U.S. at 72, 437 (2004). Accordingly, I respectfully dissent. I would also expressly disapprove of the continued use of Model Criminal Jury Instruction 8.5 and adopt an instruction consistent with those used in other circuits.