**MELVILLE JOSEPH Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS Appellee**

D.C. Criminal App. No. 2005-62

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

August 5, 2008

CATHERINE L. YOUNG, ESQ., St. Thomas, USVI, *For the Appellant.*

MATTHEW C. PHELAN, ESQ., St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands;* FINCH, *Judge of the District Court of the Virgin Islands;* and D'ERAMO, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

### (August 5, 2008)

Appellant Melville Joseph ("Joseph") appeals his conviction in the Superior Court for third-degree assault and possession of a deadly weapon during the commission of a crime of violence. For the reasons stated below, the Court will affirm Joseph's convictions on both counts.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of November 5, 2004, Joseph was repairing a car outside an apartment complex known as Oswald Harris Court, located on St. Thomas, U.S. Virgin Islands. The victim in this case, Troy Emmanuel ("Emmanuel"), lived in that complex and observed Joseph performing repairs from his apartment window. Emmanuel went downstairs, where he encountered Joseph. An altercation between Joseph and Emmanuel ensued. Joseph stabbed Emmanuel with a sharp object.[1] Joseph and Emmanuel then went their separate ways.

The Virgin Islands police were called to the scene of the altercation between Joseph and Emmanuel. Police officers found Emmanuel bleeding profusely from the chest and arranged for him to be transported to a hospital.

Appellee Government of the Virgin Islands (the "Government") thereafter charged Joseph with one count of third-degree assault and one count of possession of a deadly weapon during the commission of a crime of violence. A jury convicted Joseph of both offenses. Joseph made a motion for a judgment of acquittal at the close of the Government's evidence and again at the close of his case-in-chief. The trial court denied both motions. Joseph timely appealed.

---

[1] The parties dispute what object Joseph used.

On appeal, Joseph raises four main issues: (1) that his counsel provided ineffective assistance; (2) that there was insufficient evidence to support his convictions; (3) that the Government failed to disprove the defense of self-defense; and (4) that he was prejudiced by the jury instructions.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); Revised Organic Act of 1984, 48 U.S.C. § 1613(a) (2006).

### B. Standard of Review

#### 1. Ineffective Assistance of Counsel

To prevail on an argument of ineffective assistance of counsel, a defendant must show both deficiency in performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The 'deficiency' step asks whether counsel's conduct "fell below an objective standard of reasonableness' viewed as of the time it occurred." *United States v. Baird*, 218 F.3d 221, 226 (3d Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 690; *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)). "The 'prejudice' prerequisite asks whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694; *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).

#### 2. Sufficiency of the Evidence

The standard of review for a sufficiency of the evidence claim is plenary. *United States v. Taftsiou*, 144 F.3d 287, 290 (3rd Cir. 1998). In determining the sufficiency of the evidence for a conviction, the Court looks at the evidence in the light most favorable to the government. The jury verdict is sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3rd Cir. 2001) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

### 3. Jury Instructions

■ In reviewing jury instructions, a court reviews the trial court's expression for abuse of discretion. *United States v. Zehrbach,* 47 F.3d 1252, 1264 (3d Cir. 1995) (citations omitted), *cert. denied,* 514 U.S. 1067, 115 S. Ct. 1699, 131 L. Ed. 2d 562 (1995). A court must consider "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury." *Bennis v. Gable,* 823 F.2d 723, 727 (3d Cir. 1987). A court must reverse if "the instruction was capable of confusing and thereby misleading the jury." *Id.* (citing *United States v. Fischbach and Moore, Inc.,* 750 F.2d 1183 (1984)); *United States v. Goldblatt,* 813 F.2d 619, 623 (3d Cir. 1987).

■ Nevertheless, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *United States v. Dixon,* 201 F.3d 1223, 1230 (9th Cir. 2000). Moreover, "we do not engage in a technical parsing of [isolated] language of the instructions, but instead approach the instructions in the same way that the jury would — with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.'" *Johnson v. Texas,* 509 U.S. 350, 368, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993) (emphasis added) (quoting *Boyde v. California,* 494 U.S. 370, 381, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)). "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega,* 179 F.3d 793, 806 n. 16 (9th Cir. 1999) (emphasis added) (citing *United States v. Moore,* 109 F.3d 1456, 1465 (9th Cir.) (en banc), *cert. denied,* 522 U.S. 836, 118 S. Ct. 108, 139 L. Ed. 2d 61 (1997)). The Supreme Court has explained that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004). If the jury instructions "as a whole [are] ambiguous, the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" *Id.* (internal quotation omitted) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Joseph argues that his counsel provided ineffective assistance at trial by failing (1) to adequately present the defense of self-defense and (2) to preserve issues for appeal.

 "It is well settled . . . that Sixth Amendment ineffective assistance of counsel claims . . . are generally not entertained on a direct appeal." *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004) (citation omitted). "This refusal to entertain . . . claims on direct review stems from the reality that such claims frequently involve questions regarding conduct that occurred outside the purview of the [trial] court and therefore can be resolved only after a factual development at an appropriate hearing." *Id.* (citations and quotations omitted). There is a narrow exception to this rule: "[W]here the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). However, "[w]here a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision." *McLaughlin*, 386 F.3d at 556 (citing *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 133 (3d Cir. 1984)).

 The record in this matter does not permit the Court to consider the reasonableness of the trial strategy of Joseph's counsel. Specifically, the record is inadequate for a determination to be made regarding whether Joseph's counsel sufficiently developed Joseph's self-defense theory and erroneously omitted to raise certain issues during trial. Because neither of Joseph's ineffective assistance of counsel arguments "fits into that narrow class of ineffectiveness claims amenable to review on direct appeal," *McLaughlin*, 386 F.3d at 556, those arguments are premature and are better left for collateral attack. Accordingly, the Court declines to address those arguments.

### B. Sufficiency of the Evidence

According to Joseph, the evidence adduced at trial is insufficient to sustain his convictions for third-degree assault and possession of a deadly weapon during the commission of a crime of violence.

## 1. Third-Degree Assault

With respect to his third-degree assault conviction, Joseph asserts that there is no evidence in the record that he used a deadly weapon.

█ In count one of the information, the Government charged Joseph with committing third-degree assault, in violation of Title 14, Section 297(2) of the Virgin Islands Code.[2] The Virgin Islands Code provides that an "assault" occurs when the defendant, under circumstances not amounting to an assault in the first or second degree, "(1) attempts to commit a battery; or (2) makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." *Id.* § 291. Thus, the government was required to prove that Joseph, through the use of a deadly weapon, attempted to commit a battery on Emmanuel or made a threatening gesture with an immediate intention and a present ability to commit a battery. *See Alcindor v. Gov't of the Virgin Islands*, D.C. Crim. App. No. 2004-84, 2006 U.S. Dist. LEXIS 88212, at *8-9 (D.V.I. App. Div. Nov. 28, 2006); *see also Gov't of the Virgin Islands v. Grant*, 19 V.I. 440, 445-446 (V.I. Terr. Ct. 1983), *aff'd in relevant part*, 21 V.I. 20, 25 (D.V.I. 1984), *aff'd*, 775 F.2d 508 (3d Cir. 1985).

█ Here, the record reflects that Joseph choked Emmanuel and stabbed him with an object that Emmanuel described as an ice pick. Joseph's act of choking and stabbing Emmanuel is evidence of his intent to commit a battery on Emmanuel. *See, e.g., Government of Virgin Islands v. Lake*, 5 V.I. 594, 362 F.2d 770, 774 (3d Cir. 1966) (noting that intent must ordinarily be proven through circumstantial evidence in light of the facts of the case); *Gov't of Virgin Islands v. Sampson*, 42 V.I. 247, 94 F. Supp. 2d 639, 643 (D.V.I. App. Div. 2000) (noting that matters of intent may be inferred from the facts and circumstances of the defendant's conduct). Joseph's use of an ice pick in a manner calculated to kill another person rather than to break up ice made the ice pick a deadly object for

---

[2] That section provides:

Whoever, under circumstances not amounting to an assault in the first or second degree —

. . . .

(2) assaults another with a deadly weapon;

V.I. CODE ANN. tit. 14, § 297(2) (Lexis 2008).

the purpose of third-degree assault. *See Government of the Virgin Islands v. Robinson*, 30 V.I. 428, 29 F.3d 878, 886 (3d Cir. 1994) (noting that an *ice pick* may constitute a deadly weapon if, "from the manner used, [it] is calculated or likely to produce death or serious bodily injury") (emphasis supplied) (citations omitted); *Phipps v. Gov't of the Virgin Islands*, 241 F. Supp. 2d 507, 510 (D.V.I. App. Div. 2003) (finding that a crowbar, when used to strike another person, "became a weapon that was likely to cause death or serious injury"). In light of this evidence, the Court finds that there was sufficient evidence to support Joseph's third-degree assault conviction.[3]

## 2. Possession of a Deadly Weapon During the Commission of Crime of Violence

Joseph argues that there is insufficient evidence to sustain his conviction for possession of a deadly weapon during the commission of a crime of violence. Joseph specifically maintains that the Government failed to prove that his possession of such a weapon was committed during the commission of a crime of violence.

The crime of possession of a deadly weapon during the commission of a crime of violence is codified at Title 14, Section 2251(a) (2) (B) of the Virgin Islands Code.[4] That offense requires the prosecution

---

[3] Joseph expends much energy explaining that the object he used to stab Emmanuel — what Joseph describes as a nail — may in some circumstances come within the definition of a deadly weapon. According to Joseph, however, the nail in this case cannot be a deadly weapon because of the manner in which Joseph used it. Specifically, Joseph contends that the trial testimony reflects merely that he stuck Emmanuel with some object. That contention is misguided. On direct examination, Emmanuel testified that Joseph stabbed him "with an ice pick object; a home made object he have." [J.A. at 33.] Such an object has specifically been held to constitute a deadly weapon. *See Robinson*, 29 F.3d at 886.

[4] That section provides:

(a) Whoever —

. . . .

(2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall —

. . . .

(B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty

539

to prove that the defendant possessed a deadly weapon that he intended to use against the victim while he committed or attempted to commit a crime of violence. *See Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1179 (D.V.I. 1989) (citing *Grant*, 19 V.I. at 445-446 n. 7).

To substantiate his claim that the Government failed to prove that he possessed a deadly weapon during the commission of a crime of violence, Joseph falls back on the argument he raised with respect to his third-degree assault conviction. According to Joseph, because his third-degree assault conviction should be reversed, there is no crime of violence to sustain his conviction under Section 2251(a)(2)(B). The Court has already concluded, however, that Joseph's third-degree assault conviction is supported by sufficient evidence. As a consequence, the basis on which Joseph challenges his Section 2251(a)(2)(B) conviction is deficient.

The trial testimony reflects that Joseph had on his person a sharp object that Emmanuel described as an ice pick. For the same reasons as those given with respect to Joseph's third-degree assault conviction, that object may constitute a deadly weapon for the purpose of Section 2251(a)(2)(B) when used to stab someone. *See, e.g., Phipps*, 241 F. Supp. 2d at 510 (affirming a Section 2251(a)(2)(B) conviction where the defendant struck the victim with a crowbar); *Grant*, 19 V.I. at 446-447 (affirming a Section 2251(a)(2)(B) conviction where the defendant used a large knife to attack the victim). The testimony further reflects that Joseph possessed and used that deadly weapon during the commission of a crime of violence, that is, third-degree assault. *See* V.I. CODE ANN. tit. 23, § 451 (Lexis 2008) (defining a "crime of violence" as, *inter alia*, "assault in the third degree"); *see also Grant*, 19 V.I. at 446 n. 7 (stating that third-degree assault is a crime of violence *as a matter of law*) (emphasis in original). That testimony, construed in a light most favorable to the Government, is sufficient for a rational jury to have convicted Joseph under Section 2251(a)(2)(B).

---

shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

V.I. CODE ANN. tit. 14, § 2251(a)(2)(B) (Lexis 2008).

## C. The Defense of Self-Defense

Joseph asserts that his convictions should be reversed because "the Government failed to disprove beyond a reasonable doubt Appellant's assertion of self-defense." [Appellant's Br. at 21.]

■■ ■■ Under Virgin Islands law, "once a defendant introduces evidence from which the jury could find the elements of self-defense, the prosecution has the burden of proving its absence beyond a reasonable doubt." *Robinson*, 29 F.3d at 882 n. 3 (citing *Government of Virgin Islands v. Smith*, 27 V.I. 332, 949 F.2d 677, 680 (3d Cir. 1991)). As noted above, Joseph clearly presented the defense of self-defense. The burden therefore shifted to the Government to disprove that defense. *See id.* Under Virgin Islands law, the defense of self-defense allows an individual to inflict only that amount of harm that is necessary for the purpose of defense. V.I. CODE ANN. tit. 14, § 43 (Lexis 2008).

Joseph seeks to bolster his argument by focusing on the fact that the trial testimony of his eye witness, Kambon Maynard ("Maynard"), supported Joseph's claim that he acted in self-defense and that the Government did not produce any witnesses other than Emmanuel to prove that Joseph did not act in self-defense.

■■ The testimony at trial of both Joseph and Maynard suggests that Emmanuel approached Joseph and physically engaged him.[5] Emmanuel testified that he approached Joseph and asked him why he was using Emmanuel's battery while repairing the car. Emmanuel further testified

---

[5] On direct examination, Maynard testified, in pertinent part:

Q. Tell me exactly what you saw and exactly what happened in front of you.
A. Okay. Well [Emmanuel] come downstairs.
Q. How did he come downstairs?
A. Well, rush come downstairs for nothing, no reason.
Q. Okay. What else was [Emmanuel] doing? What he saying anything else?
A. Mean no. Nothing about that de [sic]. They face up. They face up and then.
Q. What do you mean they face up?
A. Well [Emmanuel] come up in the man face.
Q. Okay.
A. And [Emmanuel] chuck off de [sic].
Q. And he chuck him up and how was the chuck off?
A. Well the chuck off like this a bop, so the man —
. . . .
Q. — what happened to [Joseph] . . . when . . . Emmanuel did that?

541

that Joseph thereafter cursed at him, choked him and stabbed him with an ice pick. Emmanuel also testified that he did nothing to cause Joseph to attack him with the ice pick, that he did not "come at [Joseph] with anything," [J.A. at 39], and that he did not throw Joseph down.

In essence, Joseph invites the Court to second-guess the jury's apparent determination that Emmanuel's testimony was more credible than Joseph's and Maynard's. That invitation must be declined, since the determination of witness credibility is the sole province of the finder of fact. *See Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995) ("The fact that the testimony is contradictory does not mean the evidence is insufficient, only that the jury must make credibility determinations.") (citing *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1995) (en banc), *cert. denied*, 457 U.S. 1106, 102 S. Ct. 2906, 73 L. Ed. 2d 1315 (1982)); *Gov't of the Virgin Islands v. Peters*, 121 F. Supp. 2d 825, 830 (D.V.I. App. Div. 1998).

 If the jury credited Emmanuel's testimony that Joseph choked him and stabbed him with a deadly weapon without provocation, and discounted Joseph's and Maynard's testimony that Emmanuel threw Joseph to the ground before Joseph stuck him with a nail, the jury reasonably could have inferred an intent by Joseph to inflict harm on Emmanuel for no reason at all. Indeed, even if the jury found that Emmanuel approached Joseph at a rapid pace or with an aggressive air, it reasonably could have found that Joseph's reaction was unwarranted. On these facts, the Court cannot hold as a matter of law that the evidence was insufficient for a rational jury to find beyond a reasonable doubt that Joseph did not act in self-defense. *See, e.g., Isaac*, 50 F.3d at 1179-80.

## D. Jury Instructions

 Joseph asserts that the trial court erred in its charge to the jury on third-degree assault by referring to the object Joseph used to assault Emmanuel as a "battery tester." Where, as here, the defendant does not object to the jury instruction at trial, a court's review is limited to plain

---

 A. Well, . . . so he was off balance and he fall and end up on he bottom hard on the concrete. So while he fall on the ground on concrete, it had like a long nail so [Joseph] chook him with it.

[J.A. at 62-64.]

error.[6] *See Motta v. Virgin Islands*, D.C. Crim. App. No. 2002-163, 2004 U.S. Dist. LEXIS 25112, at *18 (D.V.I. Nov. 30, 2004) (citing FED. R. CRIM. P. 30(d), 52(b)). Furthermore, "[i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *United States v. Gordon*, 290 F.3d 539, 545 (3d Cir. 2002) (internal quotations omitted).

Joseph urges that the trial court erred by referring to the object he used to attack Emmanuel as a battery tester because that reference constituted "two conclusions of fact that should have been left in the exclusive domain of the jury." [Appellant's Br. at 25.] The first of these conclusions, according to Joseph, is that Joseph used a battery tester. Joseph argues that because no trial testimony suggests that the object Joseph used was a battery tester, such a conclusion is improper. Second, Joseph finds fault with "the conclusion that a battery tester is an inherently deadly weapon." [*Id.*] According to Joseph, that purported conclusion "did not allow for the jury to find that even if [he] assaulted Mr. Emmanuel with a[n] ice pick/nail/battery tester, he did not assault him with a deadly weapon because the object was not used in a manner calculated to inflict serious bodily harm." [*Id.* at 25-26.]

 During the jury charge, the trial judge read the list of elements for third-degree assault that the jury had to find beyond a reasonable doubt:

> One, that Defendant Melville A. Joseph he intentionally assaulted Troy Emmanuel by stabbing him in the chest. Two, that the defendant Melville A. Joseph used a deadly weapon, namely, battery tester. And three, that the defendant acted knowingly and intentionally. And four, that the defendant's actions . . . were not justified.

[J.A. at 166.]

"When reviewing a jury instruction for plain error, the 'analysis must focus initially on the specific language challenged, but must consider that

---

6 This Court has explained that

[f]ailure to object to jury instructions in a timely manner at trial prevents challenging those instructions on appeal . . . [except] where the reviewing court finds "plain error" in the instructions, that is, that the alleged error was "fundamental and highly prejudicial" so "that failure to consider the error would result in a miscarriage of justice."

*Brandy v. Flamboyant Investment Co.*, 26 V.I. 384, 772 F. Supp. 1538, 1541 (D.V.I. App. Div. 1991) (citations omitted).

language as part of a whole.' " *United States v. Gambone*, 314 F.3d 163, 183 (3d Cir. 2003) (quoting *Gordon*, 290 F.3d at 544), *cert. denied*, 540 U.S. 815, 124 S. Ct. 67, 157 L. Ed. 2d 31 (2003). The parties appear not to dispute, and the Court agrees, that the challenged instruction in this case constitutes error to the extent that a reasonable juror could take it to mean that the only way Joseph could be found guilty of third-degree assault is if he had used a battery tester to attack Emmanuel. That error is therefore plain to the extent it is clear and obvious. The focus of the inquiry thus shifts to whether that error prejudiced Joseph's substantial rights.

While the Court does not doubt that the jury instructions would have been better if the word "battery tester" had been omitted, the Court is persuaded that the instructions, when read in context, were not misleading or inadequate to guide the jury's deliberation and that there is no "reasonable likelihood" that the jury convicted Joseph without proof beyond a reasonable doubt that he used a "deadly weapon."

 First, after reading the elements of third-degree assault to the jury, the trial judge defined "deadly weapon":

> Now a "deadly weapon" is any object that is used in a way that is likely to cause serious physical injury or death. The way the an object is used or intend to be used in an assault determines whether or not it is a deadly weapon. If an object is used in a way that is likely to cause serious physical injury death, it is a deadly weapon. You must decide from all of the facts and circumstances, whether the evidence shows, that the battery tester in question here was a deadly weapon. You may not find the defendant guilty unless you are satisfied that the government has established every essential element of the offense, as explained in this charge beyond a reasonable doubt.

[J.A. at 167-68.]

Significantly, that instruction, although it again made reference to a battery tester, made clear that the jury itself had to determine whether the object in question — whether an ice pick, a nail, a battery tester, or some other object — was a deadly weapon. Consistent with the definition of what constitutes a deadly weapon, the trial judge explained that the manner in which the object is used is the operative question in making such a determination. Consequently, the Court disagrees with Joseph's

argument that the trial judge effectively usurped from the jury its task of determining an essential element of third-degree assault, that is, whether the object that Joseph used was a deadly weapon. *See, e.g., United States v. Estrada-Fernandez,* 150 F.3d 491, 497 (5th Cir. 1998) (reasoning that a determination whether an object is a dangerous weapon is a jury question and that the relevant factors include the circumstances under which the object is used); *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir. 1994) ("[W]hat constitutes a dangerous weapon in a particular case is a question of fact for the jury.").

Second, contrary to Joseph's contention, the trial judge did not tell the jury that a battery tester was a deadly weapon. Rather, the trial judge merely mentioned the battery tester and instructed the jury to find whether that object constituted a deadly weapon. *See, e.g., United States v. Harris,* 293 F.3d 863, 870 (5th Cir. 2002) (finding that the trial judge did not err in instructing the jury that the defendant had used a baton because that fact was undisputed, and noting that the jury itself had to determine whether the baton constituted a dangerous weapon), *cert. denied,* 537 U.S. 950, 123 S. Ct. 395, 154 L. Ed. 2d 296 (2002); *cf. United States v. Davis,* 429 F.2d 552, 556 (8th Cir. 1970) (finding that the trial court committed error by instructing the jury that a pistol is a deadly weapon, "as the question was one for the jury, and that a weapon may or may not be deadly according to its size and the manner of its use").

Third, before reading the elements of third-degree assault, the trial judge told the jury that "[i]n summary, Count One of the Information charges the defendant with Third Degree Assault which is assault with a *Deadly Weapon.*" [J.A. at 165] (emphasis supplied). The trial judge subsequently reiterated to the jury that "Joseph is charged in Count One of the Information with assault with *Deadly Weapon . . . .*" [*Id.* at 166.] Furthermore, the trial judge immediately prefaced the list of elements the jury had to find that the Government had proved beyond a reasonable doubt, with an instruction stating the crime charged:

> Whoever assaults another *with a deadly weapon* shall be guilty of Third Degree Assault. To prove the defendant guilty of assault in the Third Degree that is: *Assault with a Deadly Weapon,* the government must prove beyond a reasonable doubt, each of the following elements . . . .

[*Id.*] (emphasis added). *See, e.g., United States v. Smith,* 520 F.3d 1097, 1103 (9th Cir. 2008) (rejecting a jury instruction challenge based on trial judge's having used the words "prison-made knife" in the elements list of assault with a dangerous weapon, because, *inter alia,* "the district court immediately prefaced the elements list with an instruction stating the crime charged: 'The defendant is charged . . . with assault with a *dangerous weapon.*'") (emphasis in original).

Finally, the trial judge specifically told the jury that it was to decide the case based on the evidence presented at trial:

> The evidence from which you will decide what the facts are consists of sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness; the exhibits that have been received into evidence; and any facts to which the lawyers have agreed or stipulated.

[Supp. J.A. at 35.] The trial judge proceeded to instruct the jury on what does and does not constitute evidence. Those instructions clarified that the jury's role was to determine Joseph's guilt or innocence based solely on the facts of the case, not on the statements or characterizations of counsel or the trial judge about those facts. Importantly, the Court is convinced that those instructions diminished any ill effect of the trial judge's reference to a battery tester.

▮ For these reasons, the Court is satisfied that the trial court did not remove from the jury's deliberation any critical question because the trial court did not in fact tell the jury that a battery tester, or any other object, is a deadly weapon. Nor did the trial court tell the jury how the object in question was used or that such use rendered the object a deadly weapon for third-degree assault purposes. Rather, the trial court clearly instructed the jury to determine whether the object Joseph used to attack Emmanuel was a deadly weapon. Any mention of the battery tester must be viewed within the context of the jury instructions as a whole. Those instructions make repeated references to the charge of "assault with a deadly weapon" without mentioning any particular object. As a consequence, the Court is persuaded that those repeated references prevented the jury from making the impermissible assumption that Joseph used a particular object that the jury *was* bound to accept as a deadly weapon. Accordingly, the Court does not find that reversal of Joseph's third-degree assault conviction is warranted based on his jury instruction challenge.

## IV. CONCLUSION

For the reasons stated above, the Court will affirm Joseph's convictions on both counts. An appropriate judgment follows.